UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DARRELL HANCOCK, ET AL. | CIVIL ACTION |
| VERSUS | NO: 16-14998 |
| HIGMAN BARGE LINES, INC., ET AL. | SECTION: "J" (1) |

## ORDER AND REASONS

Before the Court is a *Motion for Partial Judgment on the Pleadings* **(Rec. Doc. 17)** filed by Higman Barge Lines, Inc. ("Higman"), an opposition thereto (Rec. Doc. 29) filed by Darrell Hancock and Jennifer Hancock, individually and on behalf of Ethan Hancock ("Plaintiffs"), and a reply (Rec. Doc. 38) filed by Higman. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED in part and DENIED in part**.

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of a tragic incident involving two vessels on the Gulf Intercoastal Waterway ("GIW") and resulting in the death of a five-year-old boy. Plaintiffs' complaint alleges as follows:[1] On the evening of July 30, 2016, Darrell Hancock took his son, Ethan Hancock, on a fishing or "frogging" trip in a sixteen foot mudboat in and around Terrebonne and Lafourche

---

[1] Rec. Doc. 1 at 3-5.

1

Parishes in Louisiana. After they were finished frogging, their mudboat ran out of fuel in a canal near the GIW in Lafourche Parish. Darrell Hancock attempted to manually pilot the mudboat across the GIW in order to reach a docking area where they could await more fuel. At this point, a tugboat owned by Higman named the M/V Trinity Bay "began bearing down on them while pushing two empty barges." The mudboat was immobilized by the current and used a light to signal a warning to the M/V Trinity Bay. The M/V Trinity Bay's captain and crew saw Darrell and Ethan Hancock and noticed that they were in distress. Instead of slowing down, the M/V Trinity Bay continued to move rapidly toward Darrell and Ethan Hancock. Darrell Hancock then grabbed Ethan and jumped from the mudboat into waters of the GIW. The father and son were both sucked under one of the barges being pushed by M/V Trinity Bay and they were separated from each other. Darrell Hancock pleaded for help from the captain and crew of the M/V Trinity Bay. The M/V Trinity Bay stopped its forward movement and pushed the barges away. Ethan Hancock's body was not found until the next morning underneath one of the barges pushed by the M/V Trinity Bay.

Plaintiffs filed this suit, alleging negligence and unseaworthiness on the part of Higman. Plaintiffs seek compensatory and punitive damages, and have brought a wrongful death and survival action on behalf of Ethan Hancock. Higman has filed the instant motion for judgment on the pleadings, requesting

relief in three areas. Specifically, Higman moves the Court to dismiss Plaintiffs' claims for breach of the duty of seaworthiness, claims for lost wages and future wage earning capacity made pursuant to the wrongful death and survival death actions on behalf Ethan Hancock, and claims for punitive damages. The motion is now before the Court on the briefs and without oral argument.

## LEGAL STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion brought pursuant to Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).

Courts evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff

3

pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

## **DISCUSSION**

### I. Duty of Seaworthiness

In their complaint, Plaintiffs allege that "the vessel, M/V Trinity Bay, its appurtenances, barges being pushed, and/or the captain and crew were unseaworthy" and that this was the proximate cause of Plaintiffs' injuries. Higman argues that this claim fails as a matter of law because neither Darrell nor Ethan Hancock were Jones Act seaman and therefore no duty of seaworthiness is owed to them. In opposition, Plaintiffs argue that the duty of seaworthiness has been extended to third parties and that they qualify for such an extension.

Under maritime law, "[a] shipowner has an absolute nondelegable duty to provide a seaworthy vessel." *Brister v.*

4

*A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991). "Unseaworthiness is predicated without regard to fault or the use of due care," and it is for this reason that "the seaworthiness issue is treated like a breach of warranty, rather than the narrower duty-breach inquiry for negligence." *Id*. This warranty is "owed to a narrow class of maritime workers-those who can claim 'seaman' status under the law." 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6-27 (5th ed. 2013). The seaworthiness cause of action may only be brought by a vessel's crew member who was injured on the vessel. *Speer v. Taira Lynn Marine, Ltd., Inc.*, 116 F. Supp. 2d 826, 829, 830 (S.D. Tex. 2000). In *Sea Shipping v. Sieracki*, the Supreme Court expanded the seaworthiness cause of action to "longshoremen 'doing a seaman's work and incurring a seaman's hazards.'"[2] *Smith v. Harbor Towing & Fleeting, Inc.*, 910 F.2d 312, 313 (5th Cir. 1990) (quoting *Sieracki*, 328 U.S. 85, 99 (1946)). However, this extension was effectively overruled by the 1972 amendments to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), and the Court has "declined to extend the duty further." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 208 n.6; see also *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 629 (1959) (holding that the ship owner did not owe a duty of seaworthiness to the plaintiff who was not a member of the class of people who

---

[2] Plaintiffs who meet this qualification are often called "Sieracki Seaman." Plaintiffs make no argument here that Ethan Hancock was a Sieracki Seaman.

5

had an "absolute right to a seaworthy ship" because he "was aboard not to perform ship's work, but simply to visit a friend").

The parties here agree that five-year-old Ethan Hancock was neither a Jones Act seaman nor a longshore worker covered by the LHWCA. They agree that he qualifies as a "nonseafarer." *See Calhoun*, 516 U.S. at 205 n.2 ("By 'nonseafarers,' we mean persons who are neither seamen covered by the Jones Act, 46 U.S.C.App. § 688 (1988 ed.), nor longshore workers covered by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*") The duty of seaworthiness does not extend to Ethan Hancock, who was a nonseafarer and was not working aboard the M/V Trinity Bay at the time of the incident. *See Martin v. Fab-Con, Inc.*, 7 F. Supp. 3d 645, 651 (E.D. La. 2014) ("The Court's finding that plaintiff is not a Jones Act seaman also means that plaintiff's unseaworthiness claim against [defendant] must fail.") This holding does not affect Plaintiffs' claims against Higman sounding in negligence; it simply precludes Plaintiffs from relying on the duty of seaworthiness rather than satisfying the elements of negligence.

**II. Loss of Wages and Future Wage Earning Capacity**

Plaintiffs' complaint makes a claim for loss of wages and wage earning capacity. Higman moves the Court to dismiss this claim insofar as it is made pursuant to Ethan Hancock's wrongful death and survival actions. Higman argues that this relief is not

6

available under Louisiana law or general maritime law. It argues that Plaintiffs cannot prevail on a claim for loss of wages through the survival action for two reasons: first, Plaintiffs have not alleged that Ethan Hancock was earning wages and second, the period between the incident and Ethan's death was too brief to allow for any loss of wages. Higman also argues that the claim for lost wages and earning capacity fails under the wrongful death action because Plaintiffs have not demonstrated that Ethan Hancock had provided Plaintiffs with actual prior support.

In their opposition, Plaintiffs argue that Louisiana law allows for loss of support claims irrespective of whether the decedent had earnings. They also argue that loss of support damages may be available even without a "wholesale dependency on the decedent." Thus, Plaintiffs argue that they can claim damages for loss of support using Louisiana's wrongful death statute.[3]

Plaintiffs' claims for non-pecuniary damages rely on Louisiana law. *See Calhoun*, 516 U.S. at 206 (holding that state law may supplement general maritime law in wrongful death actions based on the death of nonseafarers in territorial waters). Louisiana law recognizes two separate and distinct actions that

---

[3] Plaintiffs also argue that both Louisiana law and maritime law recognize the right to recovery for loss of inheritance in a wrongful death action. However, no such claim is present in Plaintiffs' complaint. Any claim for loss of inheritance in this case would be entirely too speculative to withstand a motion to dismiss. *See Tallentire v. Offshore Logistics, Inc.*, 800 F.2d 1390, 1392 (5th Cir. 1986).

7

arise from a common tort: the survival action and the wrongful death action. *Taylor v. Giddens*, 618 So. 2d 834, 840 (La. 1993). The survival action provides recovery "for the damages suffered by the victim from the time of injury to the moment of death." *Taylor*, 618 So. 2d at 840. "The survival action comes into existence simultaneously with the existence of the tort and is transmitted to certain designated beneficiaries upon the victim's death." *Id*. The wrongful death action, on the other hand, "compensates the beneficiaries for their own injuries suffered as a result of the victim's death." *Walls v. Am. Optical Corp.*, 98-0455 (La. 9/8/99), 740 So. 2d 1262, 1269-70. Plaintiffs have brought a survival action and a wrongful death action in this case on behalf of Ethan Hancock. *See* La. Civ. Code arts. 2315.1, 2315.2.

Higman argues that any claim for loss of wages and wage earning capacity made pursuant to the survival action should be dismissed. "The elements of damage for the survival action are pain and suffering, loss of earnings, and other damages sustained by the victim up to the moment of death." *Broussard v. Med. Protective Co.*, 2006-331 (La. App. 3 Cir. 2/21/07), 952 So. 2d 813, 818. However, a survival action only allows for recovery "for the damages suffered by the victim from the time of injury to the moment of death." *Taylor*, 618 So. 2d at 840. Here, Plaintiffs allege that the incident involving the M/V Trinity Bay and Darrell Hancock's mudboat occurred on the night of July 30, 2016 and that

Ethan Hancock's body was located early the next morning. Plaintiffs have not alleged that enough time elapsed between the incident and Ethan Hancock's death to provide for an award for loss of earnings. *See Hollingsworth v. State Through Dep't of Transp. & Dev.*, 95-285 (La. App. 3 Cir. 10/4/95), 663 So. 2d 357, 358, 361 (holding that the victim did not survive long enough to have suffered any loss of earnings when he died "immediately" following a collision between the motorcycle he was driving and another vehicle). More importantly, the complaint alleges that Ethan Hancock was five years old at the time of this tragic incident and makes no allegation that he had been earning an income prior to this death. For these reasons, Plaintiffs' claim for loss of wages and wage earning capacity pursuant to the survival action must be dismissed.

Plaintiffs' claims for loss of wages and wage earning capacity is also made pursuant to their wrongful death action. "The elements of damages for wrongful death are loss of love, affection, companionship, services and support, as well as medical and funeral expenses." *Walker v. Yellow Freight Sys., Inc.*, No. Civ. A. 98-3565, 1999 WL 955364, at *3 (E.D. La. Oct. 19, 1999). Loss of earning capacity is not an independent element of a wrongful death claim. *See Mistich v. Volkswagen of Germany, Inc.*, 94-0226 (La. App. 4 Cir. 6/25/97), 698 So. 2d 47, 51 ("[W]hile loss of support is a recognized element of damages for wrongful death we are not

9

aware of any authority which recognizes loss of earning capacity as an element.") To the extent that Louisiana law recognizes loss of earning capacity in the wrongful death action, it is a factor to be considered in the loss of support element. *See Walker*, 1999 WL 955364, at *5 (E.D. La. Oct. 19, 1999) ("The Court concludes that, under Louisiana law, loss of earning capacity may be factored into a loss of support calculation, since earning capacity is relevant to 'the possibility of a decrease or increase in earnings.'"); *Moore v. Chrysler Corp.*, 596 So. 2d 225, 240 (La. 2 Cir. App. 1992) ("Loss of future support may include the earning capacity of the victim as well as the actual lost earnings.")

Here, Plaintiffs have not stated a claim for loss of support under the wrongful death action, which is required in order to seek loss of wages and wage earning capacity. A plaintiff who brings a claim for loss of support "must show actual prior monetary support." *Williams v. City of New Orleans*, 433 So. 2d 1129, 1137 (La. 4 Ct. App. 1983). These damages are intended "to compensate a survivor for the loss of the decedent's support." *Quatroy v. Jefferson Par. Sheriff's Office*, No. CIV.A. 04-1425, 2009 WL 961261, at *5 (E.D. La. Apr. 7, 2009). A plaintiff who cannot demonstrate prior support "has suffered no compensable loss on this element of damages." *Id*. Plaintiffs do not allege that five-year-old Ethan Hancock provided previous support, nor do they argue

as much in their opposition to Higman's motion. Thus, their claim for loss of wages and wage earning capacity is dismissed.

**III. Punitive Damages**

Plaintiffs' complaint alleges that "[t]he wanton and reckless actions and inactions of [Higman] along with the unseaworthy condition of the vessel . . . rise to the level that imposition of punitive damages [is] appropriate." (Rec. Doc. 17-1 at 8.) Higman argues that Plaintiffs' claims for punitive damages should be dismissed. It argues that Plaintiffs' allegations do not fall within the narrow subset of actions for which Louisiana law recognizes the availability of punitive damages. Higman also argues that Plaintiffs have failed to allege facts that satisfy the standard for punitive damages under maritime law.

Plaintiffs have implicitly conceded that they have no claim for punitive damage based upon Louisiana law. Louisiana has a general public policy against punitive damages, and they are only available when expressly authorized by statute. *Ross v. Conoco, Inc.*, 2002-0299 (La. 10/15/02), 828 So. 2d 546, 555. Plaintiffs do not identify any statute or Civil Code article upon which to base a request for punitive damages. *See* La. Civ. Code arts. 2315.3, 2315.4, 2315.7, 2315.8. Any claim for punitive damages made pursuant to Louisiana law must be dismissed.

However, Plaintiffs have alleged facts sufficient to make a claim for punitive damages under general maritime law. In order to satisfy this standard, the plaintiff must allege that the defendant engaged in "behavior that is more than merely negligent; rather, [the court] looks for 'gross negligence'. . . , 'reckless or callous disregard for the rights of others' . . . , or 'actual malice or criminal indifference." *Maritrans Operating Partners v. Diana T*, No. CIV. A. 97-1916, 1999 WL 144458, at *7 (E.D. La. Mar. 15, 1999) (citing *In re Marine Sulphur Queen*, 460 F.2d 89, 105 (2d Cir. 1972)). Here, Plaintiffs allege that the M/V Trinity's captain and the crew saw Darrell and Ethan Hancock in their mudboat, but that the ship did not slow down. The complaint alleges that M/V Trinity continued to bear down upon Darrell and Ethan Hancock, which caused them to evacuate the mudboat. At this stage in litigation, the Court is not prepared to declare that these allegations, taken as true, fail to state a claim for which punitive damages may be appropriate under maritime law.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Higman's *Motion for Partial Judgment on the Pleadings* **(Rec. Doc. 17)** is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Higman based upon the duty of seaworthiness are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Higman for lost wages and future wage earning capacity are **DISMISSED**.

**IT IS FURTHER ORDERED** that Higman's motion to dismiss Plaintiffs' claim for punitive damages is **DENIED**.

**IT IS FURTHER ORDERED** that the *Motion in Limine to Exclude Testimony of G. Richard Thompson* **(Rec. Doc. 19)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the *Motion for Leave to File Reply in Support of Motion in Limine to Exclude Testimony of G. Richard Thompson* **(Rec. Doc. 39)** is **DENIED AS MOOT**.

New Orleans, Louisiana this 18th day of August, 2017.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE